IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-02245-PAB-SKC

CAMMIE KENNEDY,

    Plaintiff,

v.

REGENTS OF THE UNIVERSITY OF COLORADO,

    Defendant.
_____

**ORDER**
_____

This matter is before the Court on Defendant's Partial Motion to Dismiss [Docket No. 11]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. BACKGROUND**[1]

Plaintiff began working for defendant in October 2010 as a Program Coordinator: Grant and Finance Administration for the Medical Campus. Docket No. 9 at 2, ¶ 10. Due to her success in that position, she was soon promoted to the position of Graduate Administrator. *Id.*, ¶ 11. Between 2012 and 2016, plaintiff was nominated for several awards, including the Service Excellence Award, the President's Diversity Award, and the CU Undergraduate Pre-Health Program Preceptor Award. *Id.*, ¶ 12.

In October 2015, plaintiff was contacted by Dr. Catherine Jarvis, an Associate Dean for Student and Professional Affairs in the Skaggs School of Pharmacy and

---

[1]The facts stated below are drawn from plaintiff's amended complaint, Docket No. 9, and are presumed to be true for purposes of this motion to dismiss.

Pharmaceutical Sciences ("SSPPS"). *Id.* at 3, ¶ 14. Dr. Jarvis informed plaintiff that "the former Director of Admissions had resigned and SSPPS needed an employee with [plaintiff's] skillset." *Id.*, ¶ 14. SSPPS formally offered plaintiff the position on November 23, 2015, and plaintiff "agreed to accept lateral pay in order to gain the working title of Director." *Id.*, ¶¶ 17, 19. Plaintiff began the director position on December 10, 2015. *Id.*, ¶ 20. Between December 2015 and February 2016, plaintiff increased the number of applications to SSPPS by eighty-five through her marketing efforts. *Id.*, ¶ 22.

On June 7, 2016, plaintiff received an email stating that she had been demoted and that Dana Brandorff was being promoted to Director of Marketing, Communications and Alumni Affairs, where she would assume plaintiff's primary Director responsibilities. *Id.*, ¶ 23. The email was sent to the entire department. *Id.*

During a meeting on June 10, 2016, Anthony Airhart, the Associate Dean of Finance, Budget and Administration, informed plaintiff and several other staff members that all SSPPS employees' positions were being re-evaluated and that some employees would be required to reapply for their positions as part of SSPPS's reorganization. *Id.* at 4, ¶¶ 25-26.

On June 16, 2016, plaintiff met with Ms. Brandorff, Assistant Director of Distance Degrees and Programs Operations Jennifer Payne, and Recruiting Strategist Justin Rowe to discuss her future role with SSPPS. *Id.*, ¶ 29. During the meeting, Ms. Brandorff and Ms. Payne insisted that plaintiff's position was equal to Mr. Rowe's, even though plaintiff was more experienced and held a higher-level position within SSPPS.

*Id.* at 5, ¶¶ 31-35.

On October 28, 2016, plaintiff met with Jay Rodenburg, Director of Personnel, and Laura Borgelt, Associate Dean for Administration and Operations at SSPPS. *Id.* at 6, ¶¶ 39-40. After Mr. Rodenburg and Ms. Borgelt attempted to convince plaintiff that she had always been Mr. Rowe's equal, plaintiff shared her belief that Mr. Rodenburg was discriminating against her based on her sex. *Id.*, ¶ 43. Mr. Rodenburg responded to the accusation by telling plaintiff that she lacked a "higher level of decision making." *Id.*, ¶ 44. Mr. Rodenburg and Ms. Borgelt also suggested that plaintiff was "delusional" and had fabricated her Director title. *Id.*, ¶ 45.

On or around November 2, 2016, plaintiff met with Mr. Rodenburg to discuss her "wellness." *Id.* at 6-7, ¶¶ 49-50. Mr. Rodenburg started the meeting by presenting plaintiff will pre-filled-out Family and Medical Leave paperwork. *Id.* at 7, ¶ 51. He then told plaintiff throughout the meeting that she needed to see a doctor because she had a "mental health condition." *Id.*, ¶ 53.

On November 7, 2016, Mr. Airhart accused plaintiff of violating policy and improperly using her University credit card, even though plaintiff had not violated any policy. *Id.* at 7-8, ¶¶ 56, 58. During a meeting on November 21, 2016, Mr. Rodenburg, Ms. Borgelt, and Ralph Altiere, Dean of the School of Pharmacy, terminated plaintiff's employment for "unsatisfactory performance and unprofessional conduct." *Id.* at 8, ¶¶ 59-60. Sometime thereafter, plaintiff's position was filed by a male. *Id.* at 8, ¶ 64.

Plaintiff filed this lawsuit on August 30, 2018. Docket No. 1. In her operative complaint, Docket No. 9, plaintiff asserts gender discrimination and retaliation in

3

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Docket No. 9 at 8-10. On November 23, 2018, defendant moved to dismiss plaintiff's gender discrimination claim under Fed. R. Civ. P. 12(b)(6). Docket No. 11. Plaintiff filed a response to the motion on December 14, 2018, Docket No. 15, to which defendant replied on December 28, 2018. Docket No. 19.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks

4

omitted).

## III. ANALYSIS

Plaintiff asserts that she was discriminated against based on her gender when she was demoted from her director position at the SSPPS and later terminated. *See* Docket No. 9 at 10, ¶ 78. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). "A plaintiff can prove intentional discrimination through either direct evidence or circumstantial evidence that creates an inference of intentional discrimination." *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015). When a plaintiff relies on circumstantial evidence, courts employ the three-step burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Bennett*, 792 F.3d at 1266. Under that framework, a plaintiff must first establish a prima facie case of discrimination. *Id.* If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the adverse employment action, after which a plaintiff may prevail only by showing that the defendant's stated justification for the adverse action was pretextual. *Id.*[2]

---

[2]Although plaintiff argues that she has alleged "direct evidence" of discrimination, Docket No. 15 at 9, Mr. Rodenburg's statements that plaintiff was "delusional," that she lacked a "higher level of decision-making" authority, and that she had a "mental health condition" – though arguably inappropriate – are gender-neutral on their face and therefore insufficient, standing alone, to show discriminatory intent. *See Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1151 (10th Cir. 2008) (assuming

### A. Demotion

Defendant contends that plaintiff's discriminatory demotion claim must be dismissed because plaintiff's demotion did not constitute an adverse employment action under Title VII and plaintiff has not shown that the "University's reason for her 'demotion' – that is, the School's reorganization" was pretextual. Docket No. 11 at 3, 5.

Defendant's first argument addresses the sufficiency of plaintiff's prima facie case. To establish a prima facie case of discriminatory demotion under Title VII, plaintiff must show: (1) she belonged to a protected group, (2) she was adversely affected by defendant's employment decision, (3) she was qualified for the position at issue, and (4) the job from which she was demoted was not eliminated. *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000).[3] An "adverse employment action" for purposes of the second element "is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hiatt v. Colo.*

---

remark could be viewed as "a sexist statement suggesting discriminatory motives," it was "gender-neutral on its face and [would] not, without more, support an inference of discrimination"); *see also Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) ("[I]f the content and context of a statement allow it to be plausibly interpreted in two different ways – one discriminatory and the other benign – the statement does not qualify as direct evidence [of discrimination]."). Plaintiff does not cite any other facts to support a finding of direct discrimination.

[3]The Tenth Circuit has occasionally expressed a preference for a more modern, three-part prima facie test. *See, e.g., Tabor*, 703 F.3d at 1216 n.4. As the court has also explained, however, "the articulation of a plaintiff's prima facie case may well vary, depending on the context of the claim and the nature of the adverse employment action alleged." *Bird v. West Valley City*, 832 F.3d 1188, 1200 (10th Cir. 2016) (internal quotation marks omitted); *see also Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 884 (10th Cir. 2018) (stating, in wrongful termination case, that four-part test was "one way" to establish a prima facie case of discrimination).

*Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017) (internal quotation marks omitted). "Reassignment of job duties is not automatically actionable." *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 635 (10th Cir. 2012) (quotation marks omitted). Instead, whether a particular reassignment constitutes an adverse action for purposes of a Title VII claim "depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* (internal quotation marks omitted).

Defendant argues that plaintiff's demotion did not amount to an adverse action because plaintiff has not alleged a reduction in pay or "any change to her official job title . . . , job classification, or position description." Docket No. 11 at 4. The Court disagrees. Plaintiff alleges that she gained "the working title of Director" in charge of marketing efforts, Docket No. 9 at 3, ¶¶ 19, 22, that, on June 7, 2016, Ms. Brandorff was promoted to "Director of Marketing, Communications and Alumni Affairs," *id.*, ¶ 23, and that, as a result of the promotion, Ms. Brandorff assumed responsibility for "marketing and recruitment of students, thereby absorbing Ms. Kennedy's primary Director responsibilities." *Id.* at 4, ¶ 23. These allegations support a finding that plaintiff was reassigned to a role with "significantly different responsibilities." *Hiatt*, 858 F.3d at 1316.[4] Accordingly, plaintiff has sufficiently alleged that she suffered an "adverse

---

[4]On the other hand, the Court agrees with defendant that an action causing humiliation and reputational harm does not constitute an adverse action for purposes of a Title VII discrimination claim, absent a material change in the plaintiff's employment status. *See* Docket No. 19 at 2; *Lucas v. Office of Colo. State Public Defender*, 705 F. App'x 700, 704 (10th Cir. 2017) (unpublished) (explaining that "an adverse employment action for purposes of a discrimination claim is limited to adverse actions that affect employment or alter the conditions of the workplace" and does not include "acts that carry a significant risk of humiliation," even though such acts may be sufficient under

7

action" for purposes of her prima facie case. *See Piercy v. Maketa*, 480 F.3d 1192, 1205 (10th Cir. 2007) (policy rendering female deputy sheriff ineligible for transfer to a different jail constituted an adverse employment action where the plaintiff presented evidence that work in the other jail "would be less arduous and stressful" and the opportunity to work in that facility would increase "her chances of obtaining additional job and leave flexibility"); *compare Daniels*, 701 F.3d at 636 (transfer to night dispatcher position did not constitute an adverse employment action where there was no evidence showing that the plaintiff's dispatch duties differed significantly from her previous position).

To the extent defendant challenges plaintiff's ability to establish the remaining elements of her prima facie case, *see* Docket No. 11 at 5 (arguing that plaintiff has not alleged "circumstances suggesting discrimination"), that argument also fails. Plaintiff has satisfied the first, third, and fourth elements by alleging that she is female, that she was successful in her role as Director, and that the Director position was filled by Ms. Brandorff after plaintiff's demotion. *See* Docket No. 9 at 3-4, 9, ¶¶ 22-23, 27, 67.[5]

---

the broader "adverse action" standard applied in retaliation cases (internal quotation marks omitted)).

[5]Contrary to defendant's suggestion, Docket No. 19 at 6, plaintiff does not need to show that she was replaced by a man to establish a prima facie case of gender discrimination. *See Perry v. Woodward*, 199 F.3d 1126, 1138-41 (10th Cir. 1999) (holding that a plaintiff alleging discriminatory discharge need not show that she was replaced by a person who does not share the same protected attribute to establish her prima facie case). Although *Perry* involved a claim for wrongful termination, the rationale underlying the court's holding applies equally in the demotion context. *See Id.* at 1140 (explaining that the "firing of a qualified minority employee raises the inference of discrimination because it is facially illogical to randomly fire an otherwise qualified employee and thereby incur the considerable expense and loss of productivity associated with hiring and training a replacement"); *see also Jones*, 203 F.3d at 753

Regarding defendant's final argument – that plaintiff "has not alleged anything suggesting that the University's reason for her 'demotion' . . . was a pretext for gender discrimination," Docket No. 11 at 5, the Court agrees that "it is not appropriate to evaluate the issues of an employer's legitimate [non-discriminatory] reason for its actions, and an employee's evidence of pretext," at the motion to dismiss stage. *Robinson v. Dean Foods Co.*, No. 08-cv-01186-REB-CBS, 2009 WL 2382764, at *3 (D. Colo. July 30, 2009); *see also Prier v. Steed*, 2004 WL 624971, at *2 (D. Kan. Mar. 19, 2004) ("Rebutting a defendant's proffered rationale for an employment action is not an element of the plaintiff's prima facie case, and plaintiff is under no obligation to supply such evidence in response to defendant's motion [to dismiss]."). Because defendant has not cited any case law to the contrary, the Court will defer the issue of pretext to the summary judgment stage, assuming such a motion is filed. Defendant's motion to dismiss plaintiff's discriminatory demotion claim is denied.

### B. Termination

Defendant also seeks dismissal of plaintiff's discriminatory discharge claim on the ground that plaintiff has not alleged circumstances giving rise to a inference of discrimination because "[n]othing about being accused of being delusional or being handed pre-filled out FML paperwork has anything to do with gender norms or gender."

---

(citing relevant portion of *Perry* to support court's articulation of the fourth element of a plaintiff's prima facie burden with respect to a discriminatory demotion claim); *Mebane v. Sprint/United Mgmt. Co.*, 2000 WL 1472816, at *4 (D. Kan. Mar. 2, 2000) (stating that defendant's argument – that plaintiff had failed to establish a prima facie case of discriminatory demotion because she had not "set forth any evidence that she was treated less favorably than similarly-situated non-African-American employees and/or male employees" – "miscontrue[d] the appropriate framework for plaintiff's prima facie case").

Docket No. 11 at 6. However, plaintiff does not need to rely on Mr. Rodenburg's statements to establish her prima facie case. Because plaintiff asserts a discriminatory discharge claim, she needs only to allege facts showing that: (1) she was a member of a protected class; (2) she was qualified for her position; (3) despite her qualifications, she was discharged; and (4) her position was not eliminated after her discharge. *Fassbender,* 890 F.3d at 884. Plaintiff's allegations establish each of these elements. Plaintiff alleges that she is female, Docket No. 9 at 9, ¶ 67, that she was qualified for and successful at her job, *id.* at 2-3, 7, 9, ¶¶ 11, 22, 55, 71, that she was discharged from her position, *id.* at 8, ¶ 60, and that her position was subsequently filled. *Id.* at 8, ¶ 64; *cf. Perry v. Woodward*, 199 F.3d 1126, 1140 (10th Cir. 1999) ("When viewed against a backdrop of historical workplace discrimination, an employee who belongs to a racial minority and who eliminates the two most common, legitimate reasons for termination, i.e., lack of qualification or the elimination of the job, has at least raised an inference that the termination was based on a consideration of impermissible factors.").

Because these allegations establish a prima facie case of discriminatory discharge, defendant's motion to dismiss will be denied as to this claim.[6]

---

[6]Although defendant notes that the "University cited unsatisfactory performance and unprofessional conduct in terminating Plaintiff's employment," Docket No. 11 at 6, the Court does not read defendant's motion as challenging plaintiff's ability to show pretext in connection with her discriminatory discharge claim. *See* Docket No. 11 at 3 (discussing the elements of plaintiff's prima facie case and arguing that plaintiff has "not alleged circumstances suggesting discrimination"), 7 (arguing that plaintiff's "gender discrimination claim boils down to whether she was 'terminated under circumstances giving rise to an inference of discrimination'"). Even if defendant's motion could be construed in that manner, the Court has already determined that the issue of pretext is properly addressed at the summary judgment stage.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Partial Motion to Dismiss [Docket No. 11] is **DENIED**.

DATED September 30, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge